Good morning. May it please the court. My name is Ashley Yambourian and I represent the petitioner Mr. Aram Tatintsyan in this case. Tell me how you say that. I tried. My last name? No, I got yours. The petitioner. Tatintsyan. Tatintsyan? Tatintsyan. Okay, thank you. Your Honor, I would like to reserve at least three minutes for my rebuttal. Okay. So this case hinges on a red notice issued by the Interpol based on an allegation made by the government of Russia. The red notice itself is sketchy at best. It includes mistakes about basic information like the issue date of Mr. Tatintsyan's passport. It does not identify the arrest warrant or the court order, which is the basis for this red notice. And it summarizes some allegations without any support. So how do we, okay, the red notice sort of came in at the last minute and if I understand the government's position at the time just basically said, here it is, give whatever weight, you decide what you want to do with it. That's correct. So the question that I have, I understand that your client was found to be credible. Correct. And you put in certain evidence that these red notices are not necessarily reliable when it comes to Russia. So do we review the BIA's determination that there are serious reasons for believing that Mr. Tatintsyan has committed a serious nonpolitical crime outside the United States as a conclusion of law or is it a finding of fact? I believe it was a conclusion of law because based on that, they precluded relief in the form of asylum and withholding of removal. Would it be similar to review of the question of probable cause in, let's say, a civil rights case or in other contexts where a higher court is trying to review a lower court's determination of probable cause, which some courts have characterized as a mixed question of law and fact? That's correct, Your Honor. I think that is because it has some facts and some law in it, of course. But first, I think the court or the immigration judge and the BIA should have addressed the burden issue because this issue never came up during the proceedings. No one ever mentioned that the red notice was a problem in terms of ineligibility, in terms of the bar. The government said give it limited weight. They did question him about it, but they never really said, well, this could make you ineligible. So have you gotten any more information? I realize this is outside the record, but have you gotten any more information on this red notice since then? No, Your Honor. So you don't know what other evidence could be? Let's just say we agree. Let's say hypothetically, if we were to agree with you and say, okay, just putting that in there without anything more isn't substantial evidence. Go back and look at this and look at it more seriously. You don't know what other evidence would come in? No, Your Honor. Actually, it would be the government's burden to show some evidence before the burden shifts on us under the Budiono case. So there is no evidence whatsoever. The red notice is just an allegation. It establishes no facts whatsoever. So, yes, even if the court- But if it's not sufficient, are you saying that you just win here? Or if it's not sufficient, does it go back and say, we want to know more about this? I think we win on this issue because the government had its chance to present the evidence, and they didn't. I don't think it would be fair- When you say we win on this issue, you mean the bar? Yes, Your Honor. So your win in response to Judge Callahan's question, I just want to make sure I'm understanding you before you move on. We win on the eligibility issue, and then- Eligible, that's it? Yes, because the judge- We also win on the asylum and withholding removal issue because the facts clearly show that he suffered past persecution. Do you have rulings from the Immigration Court on those issues? No, we don't have any rulings. To get back in response to Judge Callahan's question again, this is what I'm struggling with. It's one thing to say he's ineligible. If we say that's error on this record, then it seems to me, and I want to hear your response, it seems to me the correct thing to do is to remand to reach the merits. That would be one choice, Your Honor, yes. Well, why wouldn't it be the only choice if the court didn't rule on it before? Well, then- I mean, we're not usually- Factful. Yeah, we don't do things in the first instance for the most part, and, in fact, Ventura discourages us from doing that. Then you would remand the case so that the judge can make a ruling on the asylum issue. Are there other red notices that come with more information than this one? I don't know, Your Honor, because there are very few red notice cases that I have encountered. Just looking at the, I'll say the face, you know, the four corners of the red notice, what are the discrepancies that you see on it? The first discrepancy is that the passport, the number of the passport, we submitted a copy of that passport, and the issue date for the passport is incorrect. Mine had two passports, though, right? There was one from the- For example, it says nationality. Well, I'm sorry, it's under identity documents where it says issued. There is one that's 6303336707. That passport, a copy of it was submitted under tab Y in the record, and the issue date is not June 4. It's April 23, if I'm correct. That's the second one. That's the 3053 one. It says it's issued on June 4. Is that the one you- Yes, no, the one that says it's issued on November 6, 2002. Oh, so instead of November 6, it was issued when? I think it was issued on February, I mean, I'm sorry, April 23. That's wrong. It's under tab Y. Is that your client's birthday? Do we have any idea where April 23 comes from? No, it was the issue date for that passport. I can't find it right now. That's in the record? Yes, Your Honor, it's under tab Y. Okay, so we cited in tonight, well, a couple of things. There's also- He lost on CAT, right? Yes, he did. I don't, that doesn't, what in the records, what evidence is in the record that he would be tortured as opposed to criminally prosecuted if he's returned? It seems to me that your argument's not very strong on the CAT. Well, of course it is, Your Honor. There's a lot of evidence in the country reports where it says they torture people in prisons, and so we know for sure that he will be imprisoned, and so he will be tortured. You know for sure he would be imprisoned? Yes, because there's a red notice. Well, he'd be prosecuted. We don't know he would be in prison. Well, he will be detained at least. He will be taken to jail as soon as he arrives there. Okay, so that's your CAT evidence then? Yeah, and there is other evidence that we have also cited. Well, tell me what your CAT evidence is. Just give me one second, Your Honor. Do you mean from Russia or Armenia? Because the judge also removed him to designate Armenia as the country, and so it is our supposition that if he goes to Armenia, Armenia will immediately hand him over to Russia. So he will end up in jail in Russia. Okay. Now, in denying your client's relief, the BIA cited our decision in Belov v. Holder, and how do you distinguish Mr. Tatitsian's situation from that case? Well, Your Honor, the Belov case, first of all, it's a very interesting choice by the BIA because it's not even a The respondent in that case, there was a substantial evidence that supported the BIA determination. Belov had committed a serious offense. There was witness statements. There were even U.S. criminal trial. There was a criminal trial in the United States, and there were testimony from the different witnesses, from his ex-former business partner. There's a lot more evidence, a lot more evidence than that. There was a record, the record contained a transcript of the testimony of several witnesses from Russia who testified against Belov in the U.S. criminal trials. In addition to the Russian officials, Belov claims if he's returned, two of the former business associates also testified against Belov in that case. So there was a lot more. There is no case on point. Is there any precedent for holding that an applicant's ineligible for immigration based solely on an Interpol red notice? None, Your Honor. We've looked. None. There is nothing. I'm going to ask the other side about that, so be ready. The last case that this court decided, Guan versus Barr, they just decided on May 30, 2009. Again, the petitioner had testified about the crime, and he freely admitted it. In our case, our client did not admit anything. He didn't even know what this was about, and the judge found him credible. So he was a credible witness, and he had actually testified or put it in his declaration, before this red notice was even issued,  charges against him. Think of the hypothetical. Let's say I know that he was found credible here, and I know that you did put in evidence that I think it was the FSB came around and started harassing him about his business and all of that. So I'm aware of all that evidence. Let's assume, hypothetically, that he was found not credible. Would that be a weaker position for you to have? No, because still the- Why not? Because if he was found not credible, then the red notice wouldn't be up against his testimony that he'd been harassed over his business. Yes, I understand. But then the red notice itself is an allegation, and the government has to bring some evidence, evidence, not allegation, that there was a crime that was committed. She's asking you whether it wouldn't be. I think we're trying to focus on that positive credibility determination that your client has. Yes. That makes your case stronger. Absolutely. But if he was found not credible, hypothetically, you would be in a weaker situation, would you not? Hypothetically, maybe, but not that much. I think hypothetically, yes. Hypothetically, yes. But you're not in that situation. No. But when we ask hypotheticals, if there's got to be some hypothetical where someone would lose, and you lose credibility if you can't see that hypothetical. No, Your Honor. I do see that hypothetical. I understand. I agree with you that the case- Would that be a weaker case? Yes, it would be a weaker case. Okay, thank you. That's all I have. The only thing is that what I want to say, I want to stress out that the government has the burden to show some evidence that indicates there was a crime was committed. That's your point. Regardless of what my client- Okay, I got it. Let's save your time for rebuttal. Okay. Thank you. Thank you. Good morning. Good morning. Okay. We've set this- Go ahead and state your appearance for the record. I plead the court, Your Honor. Sam Rennitz on behalf of the United States Attorney General. So if we can just jump to the issue here where- Okay, it isn't hypothetical. We know that the IJ, that he was found credible. And in his testimony, he did testify as to problems with the FSB, and he was getting audited, and there were all sorts of- There is that in the evidence. And when you put the red notice in, you said, hey, here it is for whatever weight you want to do it. Is there any precedent out there that would make someone ineligible based solely on a red notice? There's no precedent. Okay. So why not here? Do you have any more information about this red notice? The government does not have more information on the red notice. You could get more information, couldn't you? Well, we'd have to get it from the Russian government, and that might be difficult, I'd imagine, but we have not reached out to the Russian government in this case. Well, what if there was evidence in the record, I think in an article that was put into evidence, that the Russians are known to be less than reputable about issuing these? And there have been instances where they just keep issuing them until someone will accept the red notice. And probably in this day and age, we might have some skepticism of the Russian government about that. I mean, do you think that that red notice is enough? The government believes that red notice is enough. But what if they made it up and there's nothing more? Like I think in Belov, even though it's not precedent for this, there was quite a bit more in the record that would tend to support that there was something here. What if they just made it up to harass him? That is a plausible theory of the case, and Petitioner has submitted background evidence to that effect. And going to the standard of review, which the panel questioned Petitioner about, it is a factual determination. It's a balancing of evidence to see whether or not this bar was met or not. And so we have two competing theories. Why is that a legal question? I mean, what are the disputed facts? My understanding in probable cause context, it's generally considered de novo, except that deference is given to any findings below as to facts. What facts? Here the facts seem relatively what the record is is the record is. I don't see any dispute. It's the interpretation of that and how you apply the legal standard of serious questions. So that sounds like a legal question to me. Well, first, I would note that every court to consider this bar so far has applied substantial evidence to this bar. Sorry, I couldn't. I didn't hear what you just said. Every court to consider this particular ineligibility bar has applied the substantial evidence standard to it. But moreover, it's not so much. It's balancing evidence. Do they have enough evidence, as Petitioner was talking about, this initial showing you have to make, which is the regulation of 1240.AD, where the government has to show some indication in the record that the ineligibility bar applies. And then the burden shifts to the Petitioner to prove it does not apply. So it's really, is there enough evidence to kick in Petitioner's burden? But it's so important, counsel, that there's a positive credibility determination. He's given this very important evidence that we must defer to. And his story is very important. Well, it's really the government and the agency found it less persuasive than the red notice because as Petitioner submitted 28J, which submitted the case of Karas, which discusses a Russian red notice. It was in the matter, the posture was for a bond hearing. But it states that you can't simply rely on the fact that Russia has, in some instances, thought to politically persecute its opponents by seeking to abuse the Interpol system. There has to be something more because certainly not every red notice based on Russian origin is void in amnesia. Well, I don't think we need to go that far, certainly. But what I'm looking at is the positive credibility determination in his story, which I'll just summarize by saying his story of the events leading up to this. And then we do have, as you indicated, some concern about red notices generally. And then this particular red notice has some discrepancies on the face of it. And it doesn't have what other red notices might have, which is a lot more backup to explain the nature of the charges. And so that constellation is pretty concerning to me. I think in many of the other cases that Petitioner cited, there is other, there's more evidence, there's witness expert testimony. Right. Well, and also, too, it seems like it could relate to what he was found credible on, the instances of harassment that went on in Russia. If you accept that it's credible, that there's nothing from this that I can't tell that they're not talking about the same thing. And so why couldn't that shift it back to the government to say, well, you've got to come up with a little more? I would agree with you. In some instances, and then there was also the article that said that Russia's been known to issue less than credible red notices. Well, the media articles don't actually cite a single instance where Interpol has not caught Russia trying to manipulate the system. So what the media articles state is – Well, one of the articles from the Financial Times says that only 3% of red notice applications are reviewed in any detail. It sounds like there's very little review. It's almost a rubber stamp. There are some examples where it has, where it turned down. I think it was the Browder case where they turned down several times. But it seems like that's the exception rather than the rule. The majority of these in general are just stamped differently. I think to show that there's a rule that Interpol has issued or that Russia isn't able to abuse the system, there has to be some evidence that it has successfully done so. In this case? In any case. In this case? In this case, I don't believe there's any – there's nothing questioning the reliability of the red notice except Petitioner's testimony in this case. In particular – Right. Hold on, hold on. Forgive me for interrupting. But do you have a response then to counter her allegations that there are inconsistencies, errors on the face of the notice? No. There is an irregularity with the passport number. Are there other irregularities? Not that I'm aware of. And what about the lack of detail in the red notice? About the who, what, when, where, why, how? I don't know what red notices typically have as level of detail. We do know there's different levels of notices that Interpol provides, and this is the highest level. So this is the one – Are there other red notices? There's lesser categories. Like there's a red notice is the highest, and there's, I believe, an orange below it. I wanted to talk about the same color. Have you seen other red notices? I've not seen other red notices. This is – it doesn't typically come up. Do you know anything about what standard of proof is required within the Russian government before they either issue an arrest warrant or issue – We do not. But we do know from the media articles that Interpol does vet the Russian government's claims when they try to come to Interpol with charges. At a 3% rate. Well, we only – That's all we can tell. We only have evidence that they have thwarted the Russian government's attempts in those media articles. Well, if you were called upon to show more than that, so that it's not a pretermitted situation, you would be the only one that had access to that. I mean, you could call the State Department or you could do something like that because obviously, you know, I don't think any court would have any interest. You know, sometimes we get these cases where people ask for asylum and say that they would be persecuted, and it turns out that they're like Eichmann or something, and they're the persecutor. And there would be – and no one would want to stop someone from going back to a country to be persecuted for war crimes or to get asylum wrongly or anything like that. But we don't really have that situation here. I mean, if this is really – if it does really indicate that it's something – there's something there, I think, of course, that would be appropriate to deny asylum. Correct. I think the problem is Russia, correct? If this was a red notice issued based on a British origin or French origin, I don't think we'd be having this discussion. That one from China. It's a problematic country when it comes to Interpol, and that's why we're here having this debate about this particular red notice. But there's no particularized evidence for Petitioner that these charges were fabricated in his case. Besides, his testimony was deemed credible but found not persuasive, not as much as Interpol issuing this red notice, which is really the two competing theories of the case, and that's where the standard of review comes into play. Because if you have two reasonable theories of the case, one of which being he committed a crime in Russia and he absconded to the United States, and then Russia went to Interpol and made these charges known to Interpol. The other theory is that he – Russia was trying to take his business, and so they fabricated these charges against him. So it's just two competing theories, and it's unsubstantiated, his testimony. It's really saying the Russian government is conspiring against me. Look how they've conspired against other people. But I'm hearing you say right now, I mean, if you present something and you say, do whatever you want with it, I mean, can you – can you represent to this court that you think that it's valid? This goes to notice, whether or not I get an opportunity to respond to the red notice? Well, I mean, you know, obviously you don't want to send someone back on something that's bogus. I mean, you're the government. We wouldn't – you know, we expect hire of the government. You wouldn't want to do that. And the – were you the – you were not the lawyer at the – and so that person just didn't seem to just say, well, hey, I've got this. Here it is. I don't really know anything about it. Do what you want with it. Didn't even really advocate for anything with it but just, hey, I have this. I think that the merits hearing shows a little differently because there was a lot of questioning about the red notice at the merits hearing from DHS. So DHS submitted the red notice prior to the merits hearing. Petitioner had two evidentiary responses to the red notice before the merits hearing. One, that's where we get these media articles from. And then during the merits hearing, we had DHS asking, did you commit this serious crime? And he said no. And he says no. And he was found credible. He was found credible. But the agency was within its discretion to find it not as plausible as the red notice. Okay. What about him being – he claims he's stateless. Well – How do you respond to that? The BIA upheld his removal to Armenia because he testified that he was born in what is now Armenia and that he served in the army of that country. How is that really responsive to his evidence that he's stateless? Well, under the removal statute, he doesn't have to be removed to a country to which he's a citizen. I think that's the misunderstanding with the petitioner. There's other options. Where he was born being one or his country of last official residence. So we're not saying he's a citizen of Armenia or a citizen of Russia. We are saying we can designate Armenia as removal because he was born there. And they're likely – Regardless of citizenship. And they're – what? Regardless of citizenship. Regardless of citizenship. And they're likely to take him back. And if they don't take him back, then that's a zadvidash habeas claim. He can get an order of supervision at that point because we can't remove him. But it's not a citizenship question. No, Your Honors. Unless you have questions about the Catt protection issue. Yeah. On the Catt, I asked on the Catt, what's your position? Let's say hypothetically that we don't agree with you on the other. Do you think this Court can affirm on the Catt? Yes. I don't believe the record compels conclusion, which is likewise a standard review for Catt, that he has established a clear probability of torture in either Armenia or Russia because he waived his past torture claim in his brief. And all he has is general background evidence from the State Department reports for Armenia. And so he didn't have to get to Russia at that point. But Russia as well, it's based on revocation of a citizenship, but he was still given a permit to live there. And otherwise, an incident in January 2015 where three individuals came to his home and he didn't require medical attention afterwards, though there was a beating, and he testified that he had blood in his urine afterwards. It doesn't rise to the level of past torture. It doesn't compel the conclusion that this was torture. And so he would not meet his eligibility. What about Petitioner's argument that prospectively it is highly likely sent back to Russia, either through Armenia or directly to Russia, that he will be prosecuted and I guess assumes that he will then be incarcerated. And then once you get into the incarceration world, there are country reports, there is evidence of torture occurring. This may have been in the meritorian. DHS may have mentioned this, but not. I can inform the court that Armenia does not have an extradition treaty with Russia, and they don't extradite to Russia. So his fear is that Armenia would simply turn him over to Russia and be unfounded. There is something in the record or not in the record? I believe it may have come up with the meritorian DHS, but I looked it up myself and there is no extradition treaty. So that would be a judicial notice thing? If it's not in the record, yes. Thank you. I respectfully disagree. There is evidence in the record that Russia and Armenia are part of a commonwealth. Asian, it's called, I forget now. Do you have a record site? I do, Your Honor. It's a document that was submitted under, I think. You need to talk into the mic. The Commonwealth of Independent States of the former republics, the former Soviet Socialist Republics that came together after the dissolution of the USSR to cooperate in political, economic, environmental, humanitarian, culture, and other spheres. That's in the record. What's the record site? The record site. It is under tab. I think I found it. It's under, it's one, page 500 of the CAR, Commonwealth of Independent States. And also I wanted to touch up on some things. The government does agree that Russia is a problematic country. My client's theory was found credible, Your Honor. He was counsel for the government, was arguing that there is a theory the government has and my client's theory, and that my client's theory was found credible. DHS did not even mention anything about the reliability of the red notice as far as ineligibility is concerned, not in their argument, not in their closing argument, nor did they even take the red notice seriously. It was the judge who came up with this ineligibility at the last minute in his decision. And there were questions, but his answers were found credible, and he didn't know anything about it. He doesn't just claim that he's stateless. He was also given a document, which the government has in its own possession, for stateless persons. He was given by the Russian government when he came to the border and applied for asylum, that's the document he presented, and it's also part of the record, Your Honor. Would you agree that he can be sent back to a country of his birth, regardless of citizenship under the statute? I'm sorry, can you repeat the question? That he can be deported back to his country of birth, even if he's not a citizen of that country. His country of birth no longer exists. That's the former republic of Armenia, Soviet Republic of Armenia. That doesn't exist anymore. He has no connection to that country legally. He went to Russia. But the government said, though, you can send someone back to where they were born, but then Armenia could say, we don't want him, and that would be the end of the story there. But then the government is making Mr. Dadinsan show that he will be tortured in Armenia by designating that country. And, first of all, that will happen because he has suffered past persecution and past torture in Armenia, as he testified credibly, and also even if he's sent to Armenia, he will immediately be taken to Russia. So where do you want him sent? Based on the red notice. We don't want him to be sent anywhere, Your Honor. What is his country? Where should he be? If you lose, where should he be sent? He's stateless. He has nowhere to go. So then that means they can't do anything? I don't think that's the right answer. He was given a stateless person's document issued by the government of Russia. But they can designate the country. Okay, so we've given you extra time. Your time's up. All right, this matter will stand submitted.  Thank you, Your Honor.
judges: Callahan, Christen, Chen